MASON and others *against* SUDAM and others.

The act of the legislature, passed the 11th of *April*, 1808, for the relief of *James Kain* and *Stephen Rea*, executors of *David Rea*, deceased, late sheriff of *Ulster*, did not authorize them to sell property under an execution, the execution of which had not been *commenced* by the deceased sheriff.

And the amount of a judgment and execution, with the sheriff's fees, being tendered by a master in chancery, on a sale of land, under a decree in favor of a subsequent mortgagee, and refused, a sale afterwards, under the judgment and execution, by the agent of the executors of *R.*, is wrongful and void.

Where the master sold a parcel of the land under a decree, with the assent of the agent of the executors of *Rea*, and a mutual understanding that the sale should be valid, and the execution be satisfied by the master out of the proceeds of such sale, and that was made known to the purchasers at the time; and the agent of the executors of *R.* afterwards sold the land, under the execution, to persons who knew all the circumstances, such subsequent sale was held to be fraudulent and void.

THE bill, in this case, was to set aside a conveyance made to the defendants *Sudam* and *Elmendorf*, under an *execution directed to the sheriff of *Ulster* county. *B. Gardenier*, being indebted to the executors of *N. Evertson*, deceased, (plaintiffs,) in the sum of 2,000 dollars, on the 5th of *October*, 1807, executed a mortgage to them of certain lands in *Hurley*, in the county of *Ulster*. The executors, afterwards, filed a bill to foreclose the mortgage, which was taken *pro confesso*. They stated that they were ignorant that the mortgaged premises were encumbered by any judgment until the master was about to sell. That a judgment at the suit of *Newkirk and others* v. *Newkirk*, docketed the 3d of *January*, 1806, for 190 dollars and 56 cents, bound the premises. That an act of the legislature was passed the 11th of *April*, 1808, for the relief of *James Kain* and *Stephen Rea*, stating that they were bail for *David Rea*, late sheriff of *Ulster*, and were his executors; that the said sheriff had made sales, but had given no deeds; had executions in his hands, the execution of which was commenced, but not completed, at the time of his death, and that many other duties and things pertaining to his office, which were commenced, remained unfinished; and thereby authorizing them, *K.* and *R.*, to execute deeds for lands sold, and to do and perform every duty, matter, and thing, in relation to the said office, as fully as *D. R.* might do, if living, provided they gave security, &c.

The bill further stated, that they gave security; that a *fi. fa.*

*September* 30th.

[ * 173 ]

1816.

MASON
v.
SUDAM.

[ * 174 ]

issued on the judgment which was delivered to the said sheriff, in his lifetime, but he did not commence the execution of it by levying on the said lands, so that the executors of the sheriff had no authority, as the bill alleged, to sell, &c. That the premises were advertised for sale by the master, under the decree, on the 12th of *May*, 1814, but the sale was postponed to the 23d of *May*, when it took place. That, until the day before the sale, neither the master, nor the executors of *Evertson*, knew of the judgment, execution, or levy; the master was then informed, by the sheriff, of the judgment, and that he had advertised *part of the premises for sale under the execution, which he had postponed to the 23d of *May*, and that there was due on the execution the sum of 315 dollars; that he proceeded not as sheriff, but as agent of *K.* and *R.*, who acted under the act. The master agreed with the sheriff to sell the part of the premises (advertised under the execution) under the decree, free and discharged from the judgment; and out of the proceeds, to retain sufficient to pay the judgment: that this agreement was made known to all the persons present, and the master sold the part of the premises which had been advertised by the sheriff, for 2,006 dollars and 35 cents, out of which he retained 315 dollars to satisfy the judgment. That the sheriff considered the land so sold as discharged of the judgment, and promised to procure a deed from the executors of *Rea*. That the postponement of the sale by the sheriff, to the 23d of *May*, was made at the instance of *Sudam;* that the master adjourned the sale of the *residue* of the premises to the first of *June*, and left in the hands of a third person the 315 dollars, until that time; that after the sale above mentioned, on the same day, *C. E. Elmendorf*, defendant, informed the master, that the sheriff, or agent of the executors of *Rea*, had sold the *part* of the premises to him for 400 dollars; that the judgment was for 190 dollars and 56 cents only. That the master attended on the 1st of *June*, to sell the residue of the premises, and to satisfy the judgment, when he was informed, that the difference between the 190 dollars 56 cents, and 315 dollars, consisted of interest, which he was not authorized to pay, and there were no directions endorsed on the execution to levy interest, but only 190 dollars and 56 cents, and sheriff's fees; that the master offered to pay this sum, which was refused. That the master then proposed to refer the question to the executors of *Evertson* at *New-York*, to which the sheriff assented. That the master, on the 1st of *June*, sold the *residue* of the premises for 474 dollars, which, with the proceeds of the former sale, was not sufficient to satisfy *the mortgage debt. That after the 1st of *June*, and after the above proposal was made

[ * 175 ]

140

and accepted, the sheriff, as agent of the executors of *Rea*, without the knowledge of the plaintiffs, or of the master, collusively sold the said *part* of the premises, for 600 dollars, to *Sudam*, defendant, who made the purchase for himself, *C. E. Elmendorf*, and *J. Burr* ; and that the executors of *Rea* executed a conveyance accordingly.   That those purchasers, at the time, well knew of the agreement between the master and sheriff ; that such sale was fraudulent and irregular, not having been duly adjourned to the 1st of *June*, or regularly advertised, and the same land had been before sold to *Elmendorf*, on the 23d of *May*.   That the executors of *Rea*, before they executed the deed to *Sudam* and the others, were informed, by letter, of all the above circumstances.   That *S. E.* and *B.* have since sold the same land to others, who knew, at the time, of the circumstances, and had brought an action of ejectment, &c.   The bill prayed that the sale to *Sudam, E.*, and *B.*, and the subsequent sales by them, might be set aside as fraudulent and void ; that upon payment, by the master, of the 190 dollars and 56 cents, and the sheriff's fees, the judgment and execution might be deemed satisfied, and the executors of *Rea* be directed to convey to the purchasers under the master's sale, all their right under the judgment ; and that *Sudam* and others may account for the rents and profits to the purchasers under the master, and that *Sudam* and others, and those holding under them, may be enjoined from selling, or committing waste, &c.

The *answer* of the defendants did not admit that the executors of *Evertson* had no notice of the judgment of *Newkirk*, but, on the contrary, alleged, that some of them had notice of it before the 22d of *May*, 1814.   They averred, that the master promised to satisfy the sheriff the amount of the judgment out of the sale, and that the sheriff desisted from proceeding on the 23d of *May*, to see if the *master would fulfil his promise.   The defendants *Sudam* and *Burr* averred, that such agreement was true ; that the sheriff, at the time, offered the *part* of the premises for sale, and showed the execution, and that the purchasers under the master knew of the judgment and execution before the sale by him. They denied any agreement that the *part* so sold should be free of the *lien*, &c., unless the master, immediately after the sale, and before it was exposed for sale by the sheriff, paid the amount due on the judgment.   *Sudam*, defendant, stated, that he attended, on the 23d of *May*, in behalf of the persons interested in the judgment, and then understood, from the master and the sheriff, that the master would pay the execution out of the moneys arising from the sale, immediately thereafter, or that the sheriff would proceed to a sale under the execution ; and that this agreement was publicly

[* 176]

1816.

MASON
v.
SUDAM.

[ * 177 ]

proclaimed by the master. That the master, after the sale, did not pay the judgment, and the sheriff, on the same day, offered the lands for sale, and *D. B.* bid 316 dollars, and the sale was then adjourned to the next day. *Elmendorf,* defendant, stated, that at the sale, on the 24th of *May,* he bid 400 dollars, and the sale was then postponed, by his consent, and subject to his bid, to the 1st of *June,* to see if the executors of *Evertson* would satisfy the judgment. *Sudam* said, that he did not attend the two last-mentioned days; and he and *Elmendorf* stated, that the master had received the purchase money, before the sale by the sheriff.

*Sudam* further stated, that on the 1st of *June,* he understood that the master had sold the residue of the land for 424 dollars, and believing that the execution had been satisfied, he did not attend at the adjourned sale of the sheriff; but afterwards, between 12 and 1 o'clock, being informed by the sheriff otherwise, and requested by him to attend, he attended the sale, and bought the first part of the premises for 655 dollars; that there was nothing fraudulent in the sale, but on the contrary, it was fair, and made *bona *fide ;* that the purchase was for the joint benefit of himself and *Elmendorf;* that on the 5th of *June* they sold one third of the land to *J. Burr* for 350 dollars, to whom they gave a deed, and received a reconveyance from the executors of *Rea.* That the only agreement known to them was, that the master should satisfy the judgment immediately after the sale, which he had not done.

A witness for the plaintiffs, *S. Bruyn,* testified, that he was present at the sale by the master, and that some person proposed that the sale should be joint under the mortgage and judgment, and to commence with the former bid, and the purchaser to take a title under the master and sheriff, which proposition appeared to be acceded to by them. When the property was struck off by the master, he proposed, with the apparent approbation of the sheriff, to deposit 315 dollars with the witness, being the amount claimed by the sheriff, to remain until the master could write to the executors of *Evertson,* and obtain their consent: that on the 1st of *June,* after the sale by the master, he offered the sheriff to pay him the amount of the execution, and his fees, which he refused, unless the interest was also added; and the master said he had no authority to pay the interest, and offered to leave it with the witness, until the consent of the executors of *Evertson* could be procured, but the sheriff expressed no assent to the proposal; that the sheriff, soon after, sold the land to *Sudam,* for 655 dollars, and then said to the master and witness, that *Sudam* would give up the purchase, if the interest was paid, the object being to secure

142

the interest; that *Sudam*, at the time of the purchase, knew of the difference between the master and sheriff. That on the 13th of *June*, according to his instructions from the executors of *Evertson*, he tendered the amount of the judgment, with the interest, to *Sudam*, who refused to accept it.

*Dodge*, the master, who was a witness, testified, that the agreement between him and the sheriff was, that the judgment *should be paid out of the master's sale, and that the master and sheriff should each give a deed to the purchaser. That the witness offered to deposit with *Bruyn* the amount of the *fi. fa.*, to abide the orders of the executors of *Evertson*. That this proposal appeared so satisfactory that no difficulty was suggested. That *Sudam* was present, and knew of every circumstance relative to the claim of the sheriff, and the agreement; and that before the sale on the 1st of *June*, the witness informed *Sudam* of the question between him and the sheriff; that he received the purchase money, executed a deed, and deposited 315 dollars with *Bruyn*. That on the 31st of *May* he received the direction of the plaintiffs to pay the amount of the execution, and he offered the sheriff 191 dollars and 50 cents, with his fees, but the sheriff refused to receive it without the interest. That the witness then said he would deposit the money with *Bruyn*, and wait for further directions, to which the sheriff either expressly assented, or induced the belief of the witness that he did assent.

*Riggs*, for the plaintiffs, raised the following points: 1. That the act of the legislature mentioned, did not authorize the executors of *Rea* to make any sale under an execution, which had not been begun to be executed by the sheriff in his lifetime; and that the sale was, therefore, void.

2. That this Court, after a decree for the sale of the mortgaged premises, will not allow a sale at law, under a judgment. (2 *Schoale & Lefroy*, 398.)

3. That the agreement between the master and the sheriff *Dubois* was binding, and the sale by the sheriff, afterwards, was fraudulent.

4. That the sum really due on the judgment, being tendered, ought to have been received.

5. That the purchasers under *Sudam* had notice.

6. That the sale of the sheriff, &c., ought to be adjudged fraudulent and void, and the amount of the judgment paid *out of the proceeds of the master's sale, and a satisfaction entered upon the judgment, and that the defendants should pay the costs.

1816.    *Harison*, for the defendants, insisted, 1. That there was no fraud in the defendants.

MASON
v.
SUDAM.

2. That if there was any fraud in any person, it must have been in *Dubois*, the sheriff, and he was not made a party, nor his representatives.

3. That the agreement, if any, between the master and *Dubois*, was merely verbal, and made without authority from the defendants.

4. That *Sudam* and *Elmendorf* were not trustees for the plaintiffs; and the purchasers under them are *bona fide* purchasers without notice of the fraud, and the plaintiffs not entitled to redeem; and that the bill ought to be dismissed with costs.

THE CHANCELLOR. There are several objections to the sale by the executors of *David Rea*, each of which appears to me to be well founded.

1. The sale was not authorized by the act of the 11th of *April*, 1808. That act only intended to authorize the executors to finish those executions of which " the execution had been commenced by their testator, and had not been completed." This was the object of their application to the legislature, and the act was not intended to be broader than the case required. It is most reasonable to give it such construction, for there was no necessity of any more extended provision, as the constitution and general law of the land had provided a known, suitable, and responsible officer for the execution of all' process that had not already been acted upon. If a sheriff seizes property under execution, and dies before the execution is completed, his representatives are responsible for the property sequestered; and it

[ * 180 ]

was fit and proper that they should *have the power to discharge the trust. It was accordingly the old and settled rule of law, that an execution was an entire thing, and when once acted upon, as by taking the property into possession, or, perhaps, by advertising it for sale, the person who thus began it must finish it, otherwise there would be great inconvenience to the sheriff and the party, and what had been done would be defeated and rendered of no avail. (*Ayre* v. *Aden*, Cro. J. 73. *Clerke* v. *Withers*, 1 *Salk.* 322. 2 *Ld. Raym.* 1072. *Wilcox*, &c. v. *Pokinhorn*, 1 *Barnadis.* 81. Lord *Mansfield*, in *Cooper* v. *Chitty*, 1 *Black. Rep.* 65.) In this case, there was no personal property which had been seized under the execution, and there was no act done, or step taken, in respect to the real estate. There was nothing which could be said to have been a commencement of the execution of the writ by the deceased

144

sheriff. The execution had lain dormant in the hands of a deputy, until after the return day, and until after the death of the sheriff. The case was, therefore, not within the reason of the rule of the common law, nor within the purview of the act.

2. The master, as agent for the plaintiffs, had offered to the agent of the executors the amount of the execution and the fees before the sale, and that offer had been rejected. The subsequent sale was, therefore, entirely in their own wrong. They had no right to demand any more than the amount of the execution, nor to levy interest on the judgment. This was the well-known and settled rule of law. (*Watson* v. *Fuller*, 6 *Johns. Rep.* 283.) The act (sess. 36. c. 203. s. 50.) evidently recognizes the rule, and only makes provision for interest to be collected on judgments *thereafter* to be recovered. The act did not apply to this case, and the parties stood upon their legal rights as they then existed. These facts were all known to the defendant *Sudam*, and to those who hold under him, at the time that they purchased.

*3. The special circumstances under which the sale was made, and which were also known to the purchasers, form, of themselves, strong ground for equitable relief.

The master sold one parcel of the land on the 23d of *May*, in the presence, and with the assent of the agent of the executors of *Rea*, and with a mutual understanding, (and that known to the purchasers,) that the sale should be valid, and that the execution was to be satisfied out of the proceeds. This agreement is sufficiently proved by the testimony of *Bruyn* and *Dodge*. If that agreement had not afterwards been complied with on the part of the plaintiffs, it would have been the duty of those claiming under the execution, to have applied to this Court, which had the direction and control of those proceeds. But that agreement was disregarded on the part of the agent of the executors of *Rea*, and the land sold under the execution, in violation of the rights of the plaintiffs, as well as of those who had purchased under the decree. The defendant *Sudam*, before he purchased, knew of the prior sale by the master, and of the agreement between the master and the agent of the executors of *Rea*, that the execution was to be satisfied out of that sale. He is, therefore, chargeable with a previous knowledge of all the equity of the case, and so are those who took under him. The sale, under all its circumstances, cannot be countenanced, nor can I suffer it to stand.

I shall, accordingly, decree, that the sale by the executors of *Rea* be set aside, as null and void; and that the amount

1816.

MASON
v.
SUDAM.

[ * 181 ]

1816.

DEY
v.
DUNHAM.

of the judgment be paid out of the proceeds of the master's sales; and that satisfaction of the judgment be entered, and that all the defendants, except *Justus Burr*, be decreed to pay costs.

Decree accordingly.